James J. KISH and John J. Pine, Jr., Plaintiff-Appellants,

v.

The COUNTY OF MILWAUKEE, Board of Supervisors For the County of Milwaukee and Edwin E. Purtell, Sheriff of Milwaukee County, Defendants-Appellees.

No. 18630.

United States Court of Appeals, Seventh Circuit.

April 14, 1971.

Robert E. Sutton, Milwaukee, Wis., Richard G. Singer, Cincinnati, Ohio, for plaintiffs appellants.

Clayton R. Hahn and Richard Hicks, Milwaukee, Wis., for defendants appellees.

Before HASTINGS, Senior Circuit Judge, and CUMMINGS and KERNER, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Plaintiffs James J. Kish and John J. Pine instituted this action for damages in the United States District Court pursuant to the Civil Rights Act of 1871, Title 42, U.S.C.A. § 1983,[1] for alleged deprivation of their rights guaranteed by the Eighth[2] and Ninth[3] Amendments to the United States Constitution. The complaint charged the County of Milwaukee, Wisconsin, the Board of Supervisors of the County of Milwaukee and the Sheriff of Milwaukee, Edwin T. Purtell,[4] with failing to secure the plaintiffs' safety from physical and homosexual assaults during their confinement in the Milwaukee County Jail.

The trial court granted motions to dismiss defendants Milwaukee County and the Board of Supervisors, D.C., 48 F.R. D. 102. Such action is not challenged here. A motion to dismiss defendant Purtell was denied and trial on the merits proceeded before the court without the intervention of a jury.

The facts are largely undisputed. Kish and Pine were prisoners in the Milwaukee County Jail in December, 1967 and January, 1968. While incarcerated, both were subjected to physical and homosexual assaults by other prisoners.[5]

Plaintiffs' witnesses Erwin J. Heinzelman,[6] Director of the Wisconsin Correctional Services, and Joseph R. Rowan, Executive Director of the John Howard Association,[7] testified that the Milwaukee County Jail had long-standing problems, including instances of physical and homosexual abuse. The problems were generally related to the overcrowding of the jail and the jail physical layout

---

1. Title 42, U.S.C.A. § 1983 provides:

   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. Amendment VIII to the United States Constitution provides:

   "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

3. Amendment IX to the United States Constitution provides:

   "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

4. Edwin T. Purtell was elected to the office of Sheriff of Milwaukee County and served in that capacity from 1967 until 1969.

5. As soon as the assaults were discovered, steps were taken to insure the safety of Kish and Pine. Kish was removed from his four-man cell and placed in a single-man cell. Criminal prosecutions and convictions of the aggressors followed an investigation of the incidents. There is no evidence that the jailors heard or saw the attacks, or that they knew in advance that the attackers were homosexually aggressive.

6. Mr. Heinzelman is a past member of two authorized committees which had conducted studies of the Milwaukee County Jail.

7. The John Howard Association is a private, non-profit correctional reform watchdog agency. It was hired by the Milwaukee County Board of Supervisors to study the Milwaukee County Jail.

which combined to make reasonable supervision and separation extremely difficult.[8]

Dr. Karl Menninger testified for plaintiffs as an expert in psychiatry and penology. It was his testimony that homosexual assault is a usual and predictable problem in jail environments throughout the United States and that jailors are aware of such activities among inmates. In response to a hypothetical question based upon the circumstances attending plaintiff Kish's imprisonment, Dr. Menninger said it was highly probable that a prisoner would be sexually assaulted and that the sheriff and the guards would be aware of such probability.[9]

Following introduction of the plaintiffs' case in chief, the motion to dismiss defendant Purtell was renewed and denied. The trial court found that the plaintiffs had "made out a prima facie case of knowledgeable deprivation of a protected right under Section 1983."

Defendant Purtell, the sole defense witness, testified concerning the substantial overcrowding that occurred between the jail's erection in 1930 and the incidents complained of in 1967 and 1968. He stated that he agreed with Dr. Menninger's opinions regarding the problems and effects of overcrowding. He also said that overcrowding in the Milwaukee County Jail made it virtually impossible to segregate prisoners according to age, offense and past records or to remove emotionally disturbed or homosexually aggressive prisoners.

Purtell recounted his own considerable efforts at publicizing the problems of overcrowding and inadequate supervision in the jail, including appeals to the public through the media and numerous appearances before the Milwaukee County Board of Supervisors. He told of his attempts to get money for more personnel and described the various stages of review that his budgetary requests must survive, ending with the Board of Supervisors.

Purtell testified that he attempted to alleviate the overcrowded condition of the jail by transferring female prisoners to an old jail in Waukesha County and using the vacated space for men. He also took advantage of other limited avenues open to him to alleviate overcrowding. He requested the early release of prisoners nearing the end of their terms and arranged transfers, where possible, to other correctional institutions.

He worked during the summer of 1968 to investigate and select possible sites for the construction of Huber quarters [10] after the Board of Supervisors abandoned previously approved plans to convert garage facilities into a Huber dormitory. The removal of Huber prisoners from the jail would have temporarily provided 140 more spaces for male jail inmates.

At the conclusion of the trial, the court found:

"* * * [T]he record is very forceful in its exposition of the vigor-

8. The final report from the John Howard study strongly recommended the development and construction of a new jail complex. The report also stated that the Association's staff was impressed with the high caliber of the jail employees and that it had received only a few minor complaints regarding such employees in interviews with 99 inmates. The report also urged the hiring of 42 more employees on the jail staff.

9. When asked if the jail guards would know that homosexual assaults or overtures would take place, Dr. Menninger replied:

"I would say that in the sense we ordinarily use the word 'know,' it's very likely that every man in prison work knows this sort of thing goes on when the opportunity is there. Now, to say that a particular event occurred and that you know it because you heard sounds of it or something of the kind, that, I don't think you could say."

10. Huber prisoners are housed in minimum security dormitories and permitted to work at regular outside employment during daytime hours.

ous efforts made by the Defendant Purtell to alleviate the problem created by the physical layout of an old building and also to alleviate the overcrowding of that jail. * * * In my view, the Defendant Purtell is not personally liable because he has personally done nothing wrong. The jail which he supervised at the time in question was and is inefficient with reference to its means of avoiding assaults of a prisoner by another prisoner, but I believe that Mr. Purtell, as this record has amply demonstrated, acted reasonably in an effort to correct the flaws inherent in the antiquated construction and in the similarly—in his effort to cure the overcrowding. And that overcrowding is the second root core of the problem, the first being the physical construction of the jail."

It then dismissed the complaints. From this adverse judgment, plaintiffs appeal. We affirm.

Appellants characterize Purtell's defense as a defense of confession and avoidance, a Nuremburg or Andersonville defense, and argue that Title 42, U.S.C.A. § 1983, *supra*, does not countenance such a defense. Even if such a defense were available, appellants contend that the evidence was insufficient to sustain a judgment for defendant.

Appellants' attempt to label Purtell's defense as confession and avoidance is misdirected. Purtell's admissions of the inadequacies of the jail structure and the probabilities of physical and homosexual abuse that flow therefrom are not confessions of fault for the assaults that occurred.

The question to be answered in this case is whether there was a breach of legal duty owed by the alleged wrongdoer to the injured party. Section 1983 contains two prerequisites for recovery: (1) the conduct complained of must have been done by some person acting under color of law; and (2) such conduct must have subjected the complainant to the deprivation of rights, privileges or im-

munities secured to him by the Constitution and laws of the United States. See, e. g., Bethea v. Crouse, 10 Cir., 417 F.2d 504, 505 (1969); Basista v. Weir, 3 Cir., 340 F.2d 74, 79 (1965).

■ The Supreme Court, in recognizing a cause of action against police officers for alleged deprivations of Fourth Amendment rights under color of law, emphasized the nature of such actions when it said, "Section 1979 [Title 42, U.S.C.A. § 1983, *supra*] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961). Necessary for recovery, therefore, is a finding that the alleged deprivation of appellants' rights to be free from cruel and unusual punishment *resulted* from a breach of duty owed by Sheriff Purtell. Campbell v. Glenwood Hills Hospital Inc., D.C.D.Minn., 224 F.Supp. 27, 32 (1963). Thus, we agree with the trial court that "The crux of this case is whether the Defendant Purtell is chargeable with the assault which Mr. Kish described in his testimony and which is reflected in Defendant's Exhibit No. 1, being the Sheriff's reports."

■ Appellants herein have merely failed to sustain their burden of proof. The trial court found, as a matter of fact, that the assaults resulted from the physical construction and overcrowding of the jail, not from any acts or omissions of Sheriff Purtell.

Appellants argue, however, that the evidence is insufficient to support this finding. They urge that Purtell had the alternative of ordering one man to a cell during the night and "[i]f nothing else, [he] could refuse to accept custody of any prisoner whose safety he could not guarantee."

There were only twenty single-man cells in the Milwaukee County Jail. The jail was designed to accommodate 360 prisoners and had a total inmate popula-

tion of as many as 420 prisoners during the time in question. The result of ordering one man to a cell would necessarily have been the release of inmates in violation of the Sheriff's statutory responsibilities.[11] Such action would have subjected the Sheriff to liability for criminal contempt, as would refusal to accept custody of prisoners.[12] To suggest that Purtell should have followed either course of action is as frivolous as the suggestion made by appellants at trial that Purtell should have resigned in protest. Moreover, the attack on appellant Pine occurred during daylight hours, when the cells were necessarily open, despite the fact that he was assigned to a single-man cell.

Appellants further contend that Sheriff Purtell should have left certain steel doors open "where it would apparently have been safe * * * and thereby allow guards a view of the inmates and to hear outcries." Further, they point to the failure of the Sheriff to utilize staff, which performed clerical duties at night, for security functions within the jail complex as indicative of Purtell's "relative unconcern for prisoners' welfare."

We have consistently adhered to a general "hands-off" policy in reviewing matters of prison administration that are within the allowable discretion of prison authorities. Tilden v. Pate, 7 Cir., 390 F.2d 614, 616 (1968); Cooper v. Pate, 7 Cir., 382 F.2d 518, 521 (1967). Absent the exercise of such discretion in a manner that would constitute clear abuse or caprice on the administrator's part, it is generally not subject to review. Bethea v. Crouse, 10 Cir., 417 F.2d 504, 505–506 (1969).

Sheriff Purtell testified that he considered the closing of the steel tier doors necessary for prison security. There was no showing by appellants that the jail would have been secure with the doors open. Moreover, there was no showing that open doors would have prevented the attacks in question. We can-

not say, on this record, that the failure to keep the doors open constituted a clear abuse of discretion on the part of Purtell.

Likewise, Sheriff Purtell felt it necessary to have three deputies performing clerical duties at night. He testified that the deputies received prisoners at night, assigned them to tiers, booked and searched them. He stated they also filed records made during the comparatively more busy daytime hours and transported sick prisoners to the hospital when necessary. There is no showing in the record that fewer men could have or should have performed this service. We find no clear abuse of discretion in the assignment of the three deputies to nighttime clerical duties.

There is no assertion that any of the assaults occurred at the direction of, or within the sight and hearing of, Sheriff Purtell or his deputies. Compare, Bethea v. Crouse, supra; Wiltsie v. California Department of Corrections, 9 Cir., 406 F.2d 515 (1968). There is no suggestion that Purtell or his deputies had or should have had actual prior knowledge of the homosexual aggressiveness of the inmates who attacked Kish and Pine. Compare, Miller v. Owsley, 422 S.W.2d 39 (Mo.1967); Glover v. Hazelwood, 387 S.W.2d 600 (Ky.1964); Justice v. Rose, 102 Ohio App. 482, 144 N.E.2d 303 (1957); and St. Julian v. State of Louisiana, 98 So.2d 284 (La.App.1957). Nor are we confronted here with an action for declaratory and injunctive relief against a manifestly unfair trusty-managed prison system as in Holt v. Sarver, D.C.E.D.Ark., 309 F.Supp. 362 (1970).

The record amply demonstrates that the assaults were a result of the physical layout and the overcrowding of the jail, both matters beyond the control of the defendant. Appellants' own expert, Dr.

---

11. See, Wis.Stat.Ann. 59.23(1).

12. See, Wis.Stat.Ann. 295.01(1).

Menninger, explained the problem as follows:

> "Q. Now, assume, Doctor, that men are confined on this tier, four men to one cell—there are twenty men total on the tier; * * *
>
> Do you have an opinion, Doctor, whether or not, under those circumstances, as I have described them to you, the white twenty-one year old male, as described, would be subjected to a sexual assault?
>
> A. I assume that you are asking me the probabilities.
>
> Q. That's right.
>
> A. It would be highly probable after your first sentence. Would you read your first sentence again?
>
> Q. That the men are confined on the tier—twenty men are on the tier, and they are four to a cell.
>
> A. That's enough. You've got four men in a cell. You already set the stage for some kind of a—some kind of homosexual plannings or propositions. You can be almost certain of that."

Moreover, the record is replete with Purtell's attempts to alleviate the underlying causes of the assaults.

We, therefore, agree with the trial court's holding that the episodes of abuse did not constitute a constitutional deprivation of appellants' rights by Sheriff Purtell. The record confirms the court's conclusion that:

> "[T]he defendant has spread upon this record very persuasive evidence of intelligent and vigorous efforts to alleviate the circumstances which permitted the assaults which the Plaintiffs complain about. Under those circumstances, in my opinion, Mr. Purtell cannot be held to have deprived these Plaintiffs of rights, privileges and immunities which are secured to them by the Constitution."

Accordingly, the order of dismissal appealed from is affirmed.

Affirmed.