Clifton MASSEY, Plaintiff,

v.

Lt. James SMITH and Officer Kreighbaum, Defendants.

No. S 82–99.

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 17, 1983.

Clifton Massey, pro se, Joseph M. Kalady, Legal Asst., Chicago, Ill., for plaintiff.

Linley E. Pearson, Atty. Gen., Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

This case is presently before the Court on a claim filed under 42 U.S.C. § 1983 by the plaintiff, Clifton Massey, an inmate at the Indiana State Prison, against two of the prison's correctional officers. This case was tried before the Court, sitting without a jury, at the Indiana State Prison at Michigan City, Indiana, on August 24, 1982. At the close of the trial on August 25, 1982, this Court ordered both parties to file with the Court proposed findings of fact and conclusions of law, with briefs in support thereof. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, this memorandum of decision and order constitutes this Court's findings of fact and conclusions of law.

At the outset, it should be noted that the defendants filed with this Court their proposed findings of fact and conclusions of law with supporting brief on October 18, 1982. To date, and notwithstanding this Court's granting plaintiff's request for an additional thirty days in which to file proposed findings of fact and conclusions of law, plaintiff has failed to comply with this Court's order of August 25, 1982. Further, this Court takes notice that plaintiff was ably represented throughout most of the trial by Joseph M. Kalady, an inmate legal assistant who, according to Mr. Kalady, holds a Master's Degree in Philosophy from DePaul University and worked for a substantial length of time in the offices of two different Chicago attorneys. Finally, this Court notes its displeasure that plaintiff has manifested a lack of interest in his case since the trial, a fact perhaps not surprising when viewed in light of the absence of any merit to plaintiff's claim.

This case was originally filed against four persons, the two remaining defendants, as well as the Superintendent of the Westville Correctional Center and the Chairman of

the Conduct Adjustment Board at Westville. Prior to trial, both the Superintendent and Chairman were dismissed as parties.

Plaintiff's complaint concerns an altercation occurring on January 21, 1982 on the Segregation unit at the Westville Correctional Center, where plaintiff was incarcerated before being transferred to Indiana State Prison. It is plaintiff's contention that the altercation resulted from the negligence of the defendants. On the date in question, defendant Smith was a Correctional Lieutenant at the Westville Correctional Center, and Officer Kreighbaum was also employed at the Center. On the morning of January 21, 1982, offenders Jeffery Lynn Dolick and Brian Herron appeared before the Conduct Adjustment Board (C.A.B.) at Westville for an alleged assault upon a correctional officer. Upon a finding of guilt, Dolick and Herron were sentenced to serve six months on Segregation. Defendant Smith and Officer James Byers (now a Recreation Leader and Locksmith at Westville) escorted Dolick and Herron from the C.A.B. room to Segregation. At the Segregation unit, Dolick and Herron were uncuffed, stripsearched, and placed in the dayroom. Dolick and Herron were sitting in chairs in the dayroom for approximately twenty minutes while cells were being located in which to place them. Plaintiff was in the shower which was next to and opened into the dayroom, when Dolick and Herron were seated in the dayroom. After his shower, and while Dolick and Herron were in the dayroom, plaintiff went into the dayroom. Dolick, without warning and apparently in order to obtain a transfer from Westville and in reaction to the sentence he had received from the C.A.B., attacked plaintiff and a fight broke out. Defendant Smith was in the dayroom, as were Officers Byers and Harvest D. Thomas, Jr. Defendant Kreighbaum was in the Officer's Station or Cage, a barred-in area adjacent to the dayroom from which the Segregation unit is controlled as to locks, lights, phones, etc. The altercation was broken up immediately by the officers, and the three participants, plaintiff, Dolick and Herron, were

placed in cells. Shortly after the incident, Dolick and Herron were taken to the Westville Psychiatric Unit at the direction of Mr. Adkins, one of the Assistant Superintendents at Westville. Plaintiff did not request any medical attention after the incident, and none of the participants or officers were visibly injured. Plaintiff was seen the day after the incident by a member of the medical staff, and he complained only of a cold. Plaintiff was seen by medical staff again on January 25, and again complained only of a cold and of continued congestion. Plaintiff's first complaint of a headache was recorded on January 26.

Since the incident, plaintiff has been seen by Dr. Weldon John Cooke, a general practitioner who is Board Certified and Recertified in Surgery; Dr. Allen, and by Dr. Reed, an optometrist. Plaintiff's skull x-rays were reviewed by Dr. Cerrulo, an ear, nose and throat specialist. None of these doctors concluded that, in their respective opinions, there was any damaging injury. Indeed, none of plaintiff's medical problems, mild sinusitis, possible allergic conjunctivitis, and visual disturbances, are the result of trauma. Plaintiff's headaches are of unknown etiology. Further, even had at least one of the physicians concluded that a blow to the head might account for plaintiff's mild sinusitis, this Court would find it highly improbable that Dolick's unarmed assault on the plaintiff could be the cause. Dolick testified in person before the Court, and was, to say the least, a physically unimpressive individual. He was of diminutive stature, with a thin and frail physique. Plaintiff, on the other hand, was of average height, powerfully built, and, more to the point, a former Golden Gloves boxer.

Prior to being sentenced to Segregation on January 21, 1982, both Dolick and Herron were patients on the Westville Psychiatric Unit. Patient/Offenders on the Psychiatric Unit are classified by the Psychiatric Unit Team to determine the method of disciplinary action and/or control that may be utilized. The classification is a medical determination, made by the Unit Team. The Unit Team includes the Psychiatrist

and the Psychologist. No correctional staff sits on the Unit Team, and neither defendant therefore sits on the Unit Team. If an offender's unit chart is tagged with blue tape, a medical determination has been made that the offender may be sent to Segregation. On January 21, 1982 both Dolick and Herron were blue-tagged; i.e., it had been medically determined that if found guilty by the C.A.B., Dolick or Herron or both could be sent to Segregation. As noted above, both were found guilty of assault on a corrections officer by the C.A.B., and were enroute to a segregation unit at the time of the altercation.

As for defendant Smith, he had worked eight years as a Special Attendant prior to becoming a correctional officer. A Special Attendant works with psychiatric patients.

Further, and prior to the altercation on January 21, 1982 Dolick and Herron were not complaining and no problem was encountered in transporting them from the C.A.B. room to Segregation or on the Segregation unit. On January 21, 1982, prior to the incident on Segregation, Dolick was calm. There is no evidence of any altercation, problems, or bad feelings between plaintiff and either Dolick or Herron prior to January 21, 1982.

Finally, as to defendant Kreighbaum, the only evidence offered was that defendant Kreighbaum was in the Officer's Station, exactly where he was supposed to be. Defendant Kreighbaum did not send or escort either Dolick or Herron to Segregation, did not place them uncuffed in the dayroom, and could not have assisted in breaking up the altercation from where he was. Defendant Kreighbaum was in the general area of the altercation. No claim under any theory or test is proven as against defendant Kreighbaum.

Thus, to recapitulate the facts, plaintiff contends that he asked for medical care immediately after the incident and again on the next day. Defendant Smith denies any immediate request. No other person testified to any apparent injury to plaintiff. On the following day, plaintiff was seen and only a complaint of a cold was noted in the medical record. Four days after the incident, plaintiff was again seen by medical staff, and again there was no indication of any trauma-related injury. Given the number of times plaintiff was seen by health care providers of all levels, from registered nurses through specialists, and the fact that except for the first two occasions complaints of headaches were noted, there is no reason to doubt the accuracy of the records made on January 22 and 25. If there was an attempt to hide medical complaints made by plaintiff, those complaints would not have been documented so often or so soon after the altercation. Plaintiff would not have been given skull x-rays, would not have been reviewed by a specialist, and would not have been referred to the optometrist. There is, therefore, no evidence that requests for medical care were made and either defendant was intentionally indifferent.

There is no dispute that an offender is entitled to a reasonable level of personal safety. There is, however, a dispute over what constitutes a reasonable level of safety and over what the plaintiff must prove in order to prevail in an action filed pursuant to 42 U.S.C. § 1983.

The Supreme Court of the United States has held that, while negligence is sufficient to state a claim for a deprivation of property rights, *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), there is no uniform answer as to the question of whether negligence is sufficient to state a claim under § 1983. One must, therefore, look to the nature of the right involved.

■ The claim in the present case is not a deprivation of property in violation of the Fifth and Fourteenth Amendments but a claim of the imposition of cruel and unusual punishment under the Eighth Amendment. The Eighth Amendment prohibits punishments or conditions that "involve the unnecessary or wanton infliction of pain." *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981). "Wanton" infliction of pain requires a level of culpability above mere negligence. Thus, the Seventh Circuit has held that

isolated acts resulted from negligence or even from some greater culpability. *Madyun v. Thompson,* 657 F.2d 868, 875 (7th Cir.1981). The Fifth Circuit after *Parratt* has held that "A prisoner has a right to be protected from the *constant* threat of violence and from sexual assault." *Jones v. Diamond,* 636 F.2d 1364, 1373 (5th Cir.1981), cert. granted, sub nom. *Ledbetter v. Jones,* 453 U.S. 911, 101 S.Ct. 3141, 69 L.Ed.2d 993 (emphasis added). By focusing on whether there is a "constant" threat, the Fifth Circuit has tacitly stated that simple negligence on a single, unpredicted occasion is not of constitutional magnitude. This is consistent with pre-*Parratt* cases concerning offender safety. For example, in *Woodhous v. Commonwealth of Virginia,* 487 F.2d 889 (4th Cir.1973), the court held that a prisoner has a right to be "protected from *constant* threat of violence and sexual assault by his fellow inmates . . . ." Id., at 890 (emphasis added). Again, the court focused on whether there is a constant threat, not merely an isolated incident. The Fourth Circuit held that there must be a determination

(1) whether there is a pervasive risk of harm to inmates from other prisoners, and if so (2) whether the officials are exercising reasonable care to prevent prisoners from intentionally harming others or from creating an unreasonable risk of harm. (Id. at 890)

■ By focusing solely upon the second phase of the quoted test, one might conclude that a negligence standard is stated. However, the test has two parts, and they must be considered together. Read together, the test is whether prison administrators are taking reasonable steps to prevent a pervasive risk of harm. A pervasive risk of harm entails much more than mere negligence. In essence, the pervasive risk would exist because the administrators are taking no steps to control violence. Thus, for a pervasive or constant risk to exist, officials would have to be intentionally indifferent to that risk.

■ These cases, one pre- and two post-*Parratt,* clearly establish that mere negligence is not enough. An official would have to be intentionally indifferent or in reckless disregard before liability in a 1983 action is established. That is precisely the holding of another pre-*Parratt* Seventh Circuit decision. *Beard v. Mitchell,* 604 F.2d 485, 494 (7th Cir.1979). It is also the recent conclusion of other district courts in this Circuit. *Starstead v. City of Superior,* 533 F.Supp. 1365 (W.D.Wisc.1981; *Eberle v. Baumfaulk,* 524 F.Supp. 515 (N.D.Ill.1981). In *Eberle,* the Court held that *Parratt* was not applicable to a personal injury situation. The Fifth Circuit recently refused to extend liability in a § 1983 action to situations in which there is no violation of a right secured by the Constitution but in which there is at most a violation of a duty imposed by tort law. *Hull v. City of Duncanville,* 678 F.2d 582, 585 (5th Cir.1982). In that case, the plaintiff alleged that injuries resulted from negligent failure to enforce train speed limits, and negligent failure to properly maintain signals, crossings, and surrounding highways. The Fifth Circuit held that no claim was stated. *Hull* is directly at odds with *Hirst v. Gertzen,* 676 F.2d 1252 (9th Cir.1982). In that case, the Ninth Circuit held that a claim was stated under § 1983 for the negligent hiring and supervision of a deputy sheriff who oversaw jail prisoners when that negligence resulted in a foreseeable risk that a violation of rights would occur and in fact proximately caused the death of an inmate by suicide. However, the holding in *Hirst* is questionable. It merely recites that *Parratt* held that negligence states a claim under § 1983, which is an overly generalized reading of that case. There is no attempt to analyze the nature of the right involved or to square *Parratt* with the case law on which it is built. Further, the Ninth Circuit does not mention that after *Parratt* the Supreme Court itself has held that an allegation of "administrative negligence" fails to state a constitutional claim. *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981). As the Supreme Court stated in *Parratt:*

Our decision today is fully consistent with our prior cases. To accept Respondent's argument that the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment

would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under "color of law" into a violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning "would make the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the states." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405. We do not think that the drafters of the Fourteenth Amendment intended the amendment to play such a role in our society. (*Parratt,* 451 U.S. at 544, 101 S.Ct. at 1917.)

*Paul v. Davis, supra,* held that defamation, even if actionable under state tort law, did not state a claim under § 1983. In *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), one of the prior cases that the Court stated was fully consistent with *Parratt,* it was held that mere negligence or malpractice did not state a claim of a deprivation of a right secured by the Eighth Amendment, but that there must be "deliberate indifference." *Estelle v. Gamble* relied upon *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976), which held that the Eighth Amendment prohibited the "unnecessary and wanton infliction of pain." And even after *Parratt,* the Supreme Court has held to precisely the same standard. *Rhodes v. Chapman, supra.* "Wanton" means recklessly arrogant, malicious, according to Webster's Dictionary. These terms are the functional and legal equivalent of intentional or callous indifference.

With the exception of *Hirst v. Gertzen,* this Court has found no case that has ap-plied *Parratt* to personal injury situations. The decision in *Hirst* is neither binding upon this Court nor correct in its application of *Parratt.* All of the post-*Parratt* cases in this Circuit have restricted *Parratt* to claims involving property rights, and even *Hirst* does not apply *Parratt* to claims arising under the Eighth Amendment.[1]

Therefore, the proper standard by which to review the actions of the defendants is whether their conduct constituted deliberate or callous indifference.

■ There is no such indifference here. Defendant Kreighbaum was doing his duty by being in and staying in his assigned area, the Officer's Station. The evidence shows no knowledge on his part that the altercation was a possibility, let alone a probability. The evidence shows, contrary to the apparent contention of plaintiff, that defendant Kreighbaum's duty was to remain in the Officer's Station and not to get out of the Station and insert himself into the altercation. This duty, imposed by the institution and not discretionary on the part of defendant Kreighbaum, is clearly reasonable under the facts of this case since other officers (including a supervisory officer) were in the immediate vicinity and by all accounts including the plaintiff's were able to respond promptly and thereby avoided any escalation of the situation. Unless the Constitution could be read as requiring correctional officers to be prescient or to have psychic powers, and in the total absence of any foreknowledge on the part of anyone, defendant Kreighbaum cannot possibly be found liable. Since the situation was not known in advance by anyone, including Dolick, defendant Kreighbaum could not possibly have been indifferent to a known or pervasive or constant risk that violence would occur.

Defendant Smith is in essentially the same position as defendant Kreighbaum. On the way from the C.A.B. room to Segregation, Dolick was very calm, not complain-

---

1. In *Hirst* at 676 F.2d p. 1265 the dissenting opinion of Judge Walter E. Hoffman emphasized that the question of recovery for simple negligence under Section 1983 under *Parratt v. Taylor* was not there material Judge Hoffman's careful analysis of the facts and the conclusions he draws therefrom is appealing and does not appear to conflict with *Parratt v. Taylor* in any way.

ing, and presented no problem. All agree that Dolick was being sent to Segregation for assaulting an officer, which fact plaintiff feels merited a closer supervision of Dolick. However, no evidence would lead one to conclude that Dolick had demonstrated a propensity toward violence. Certainly, there is no evidence that Dolick had demonstrated or made known a threat or risk that he would assault plaintiff. By both plaintiff's testimony and that of Dolick, the incident was a spur of the moment, unforeseen and unforeseeable event.

■ The Westville Correctional Center is populated by persons who have chosen to violate society's laws. Some may be there for taking a life, assaulting someone, or for other acts of violence against persons. No court has ever set a requirement that each offender convicted of a crime against persons have his own correctional officer at his side to insure against such act. No court has ever required that offenders who are incarcerated for crimes of violence be kept away from every other offender or that they be in the presence of others only in some form of restraint such as handcuffs. Thus, no constitutional right is implicated by the fact that the handcuffs were removed from Dolick while he was sitting in the dayroom awaiting a cell.

■ Plaintiff is also complaining because Dolick, a psychiatric patient/offender, was taken to Segregation and into the presence of offenders who were not psychiatric patients. If fault lies with anyone, and none does, it would have to lie with the Psychiatric Unit Team. The Unit Team made a medical decision that Dolick and Herron could be sent to Segregation. Defendant Smith did not have the authority to overrule that determination. On the evidence, he had no reason to question the medical judgment until the altercation was in progress, at the earliest. That the medical decision was apparently overruled by a non-medical staff member is irrelevant to the issue of any liability on the part of defendant Smith. The person who ordered that Dolick and Herron be sent back to the Psychiatric Unit was an Assistant Superintendent, not a Correctional Lieutenant. The evidence does not show that a Correc-

tional Lieutenant may refuse to take a person to Segregation if the Unit Team has approved that course of action and the C.A.B. has imposed a sentence upon a determination of guilt.

The reason it is stated that the decision of the Unit Team was "apparently" overruled is because in fact that medical judgment was not reversed. The Unit Team determines that a particular individual may be placed in Segregation, not that he must be. The action taken by the Assistant Superintendent is no different than any other decision to keep two offenders who have had an altercation on separate housing units. In this case, Dolick and Herron were returned to the Psychiatric Unit while plaintiff remained on Segregation. Plaintiff suggest that as the "victim," he, rather than Dolick and Herron, should have been taken off of Segregation. However, plaintiff errs because Dolick and Herron were moved not to the general population of the institution but to another controlled housing unit. Plaintiff would have been placed into the general population. Thus, all three participants remained in controlled environments and none was released to the relative freedom of general population. Further, even if a claim were stated on this point and a violation were proven, the decision to move Dolick and Herron was made by the Assistant Superintendent and not by either defendant.

At no point was either defendant intentionally indifferent to the safety of plaintiff. At no point was there any known, pervasive, or constant risk of injury to plaintiff to which either defendant could have been intentionally indifferent. Therefore, plaintiff has failed to establish a constitutional violation on the part of either defendant.

■ Even were the facts of this case to be evaluated in light of the lesser standard of negligence, no case is made out by the plaintiff. The defendants had no knowledge that plaintiff, as distinguished from the offender population at large, faced any special danger. *Martinez v. State of California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). If either defendant

750

was in fact negligent in allowing Dolick to be uncuffed in the vicinity of other offenders, the altercation was too remote a consequence of that decision to render defendants liable. This is especially true where, as in *Martinez* and on the facts of the instant case, there is an intervening actor who is not the agent of the defendant and who commits an unforeseeable, prohibited act.

Further, one need not quote *ad nauseum* from case law and law review articles which require, as *per* Prosser's famous handbook on torts, a showing that four factors must be present to state a negligence claim: (1) a duty, (2) a breach of that duty, (3) causation, and (4) damages. While no one could seriously maintain that the defendants owed no duty of care to the plaintiff, plaintiff has utterly failed to prove any facts showing a breach of that duty, any causation linking an alleged breach to the "harm suffered," and any damages.

Accordingly, judgment is entered in favor of defendants, and against the plaintiff. SO ORDERED.