**Ruben Cancel ENRIQUEZ, et al., Plaintiffs,**

**v.**

**Carlos Jimenez NETTLESHIP, et al., Defendants.**

Civ. No. 82–2583 HL.

United States District Court,
D. Puerto Rico.

Feb. 17, 1984.

David Rivé Rivera, Calderon, Rosa-Silva & Vargas, Hato Rey, P.R., for plaintiffs.

Kathleen K. Guillermety, Howard Charles, Dept. of Justice, San Juan, P.R., for defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

On January 16, 1984, plaintiffs were granted ten days to show cause as to why this case should not be dismissed, pursuant to defendants' motion for summary judgment, and particularly in the light of the Opinion and Order in Rondon Prieto, et al. v. Carlos Jimenez Nettleship, Civil 82–2582, dated October 12, 1983.

Plaintiffs seek anchorage to their claim in 42 U.S.C. § 1981, 1983, and 1985, as parents of Rubén Cancel González, mur-

dered while under custody at the Bayamón Regional Jail. Defendant Carlos Jiménez Nettleship was the Director of the Administration of Corrections. of the Commonwealth of Puerto Rico and has long ceased to hold office. Defendant Víctor Maldonado Vázquez was the Warden of Bayamón Regional Jail. An examination of the complaint reveals the following basic allegations:

"7. At said penal institution there was an extreme condition of over-crowding, lack of vigilance and protection of inmates due to lack of sufficient prison guards.

"8. Defendant, Víctor Maldonado, as Superintendent of the Bayamón Regional Jail, was physically incapable of providing protection to the life of any inmate in his institution.

"9. The decedent's death and the plaintiffs' consequential damages were caused by the denial of adequate protection to decedent, by the imposition of cruel and unusual punishment, and by the failure of the defendants and each of them to guarantee plaintiffs' decedent his constitutional rights and physical protection to which he was entitled.

"10. The acts of the defendants and each of them herein, do not constitute an isolated incident, but are part of a concerted pattern of action by the defendants and all of them, in failing to guarantee the prisoners in custody of the Administration of Correction of the Commonwealth of Puerto Rico their constitutional rights and their physical protection." [1]

Defendants promptly moved for summary judgment on the grounds that the complaint fails to state a cognizable claim under 42 U.S.C. § 1983. Defendants argue that plaintiffs failed to state specific acts on defendants' part contravening plaintiffs decedent's constitutional rights. It is further contended that plaintiffs failed to allege specific acts by defendants to consti-

tute a conspiracy to deprive plaintiff's decedent of his constitutional rights. In support thereof, defendants submitted five sworn statements, one each from defendants Nettleship and Maldonado; one from José Guadarrama, Shift Commandant at the Bayamón Regional Jail; one from José L. Roque, Penal Guard Supervisor, and one from Carlos Colón, a Social Penal Technician at said institution. The statements may be capsulized to the extent that: (1) defendants have provided the inmates at the Bayamón Jail with maximum amount of protection and security allowed by resources at their disposal; (2) decedent Rubén Cancel González never stated nor signaled that he was in special danger, nor requested special protection from the Warden or from prison officials; (3) defendant Maldonado has requested on numerous occasions the hiring of additional guards and has transferred inmates to other penal institutions to alleviate overcrowding; (4) defendant Nettleship has made serious efforts to eliminate the principal problems of overcrowding and of insufficient number of guards by requesting an increase of thirty-three percent in the number of guards, and by requesting twenty-five million dollars for the purpose of building additional living quarters for inmates.

Plaintiffs filed a reply brief in opposition to the motion for summary judgment. No affidavits or documents were attached thereto. Plaintiffs argue that summary judgment should be denied because the general conditions of the Bayamón prison, as set forth in *Morales Feliciano v. Romero Barcelo,* 497 F.Supp. 14 (D.P.R.1979), violated plaintiffs decedent's constitutional rights.

 We must reject this argument because it is against the current state of the law to hold a 42 U.S.C. § 1983 defendant liable for acts performed by others over which he had no control or in which he was not personally involved. A basic concept to

---

1. No specific allegation of personal involvement is made against Jiménez Nettleship. As to defendant Maldonado, it is only alleged that he "was physically incapable of providing protec-

tion to the life of any inmate in his institution." Paragraph nine sets forth what in substance appears to be an attempt to allege an Eighth Amendment violation.

keep in mind is that, with respect to damages, a Section 1983 action is always directed against a public officer in *his individual capacity* and not in his official capacity. Otherwise, there would occur an inevitable collision with the Eleventh Amendment. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Fernandez v. Chardon,* 681 F.2d 42, 59 (1st Cir.1982). The Supreme Court has refused to accept Section 1983 actions premised on theories of *respondeat superior. Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). In *Chardon, supra,* the Court noted: "... defendant must commit the constitutional tort ... Defendant will be liable for failures to meet his statutory responsibilities that amount to constitutional violations, *Dimarzo v. Cahill,* 575 F.2d 15, 17–18 (1st Cir.); cert. denied, 439 U.S. 927 [99 S.Ct. 312, 58 L.Ed.2d 320]."

Plaintiffs have not opposed defendants' averments that decedent Rubén Cancel González never requested protection nor made defendants aware of any particular danger. The facts, as set forth by defendants in the affidavits accompanying the request for summary judgment, are not disputed. Thus, the motion for summary judgment challenges the legal sufficiency of plaintiffs' claim. Rule 56 of FRCP is intended to promote the expeditious disposition of cases and to avoid unnecessary trials when no genuine issues of fact have been raised. In such a case, summary judgment should be granted as a matter of law "if appropriate." *Stepanischen v. Merchants Despatch Transportation Corporation,* 722 F.2d 922 (1st Cir., 1983); *Hahn v. Sargent,* 523 F.2d 461 (1st Cir. 1975).

In the complaint, plaintiffs have set forth what amounts to be a theory of absolute liability for all injuries suffered by prisoners as a result of attacks of other inmates in a penal institution. Plaintiffs, however, do not specifically allege that the defendants, and particularly the Warden, Víctor Maldonado Vázquez, were personally in-

volved. As to this issue, in *Kish v. County of Milwaukee,* 441 F.2d 901, 904 (7th Cir. 1971), the Court stated that:

"In my view the defendant Purtell is not personally liable because he has personally done nothing wrong. The jail which he supervised at the time in question was and is inefficient with reference to its means of avoiding assaults of a prisoner by another prisoner but I believe that Purtell, as this record has amply demonstrated, acted reasonably in an effort to correct the flaws inherent in the antiquated construction and ... in his effort to cure overcrowding. And that overcrowding is the second root core of the problem, the first being the physical construction of jail."

The Supreme Court has held in other contexts that prison officials are not responsible for all negligent acts of third parties causing injuries to inmates. In *Estelle v. Gamble,* 429 U.S. 97, 105–106, 97 S.Ct. 285, 291–292, 50 L.Ed.2d 251 (1976), the Court held that not all medical malpractice entitles a prisoner to bring an action under 42 U.S.C. § 1983. The Court said:

"Similarly, in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind...' Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."

See also, *Layne v. Vinzant,* 657 F.2d 468 (1st Cir.1981).

In other words, plaintiff must allege specific acts or omissions on the part of the particular defendant. Broad allegations of negligence for failure to protect prisoners from attacking each other, without more,

may or may not constitute a tort under Puerto Rico law,[2] but are insufficient to state a claim under Section 1983. *West v. Rowe*, 448 F.Supp. 58 (N.D.Ill.1978); *Massey v. Smith*, 555 F.Supp. 743 (N.D.Ind. 1983).

■■■■ The conduct or omission ascribed to a public officer must be capable of characterization as cruel and unusual in order to present a colorable claim under Section 1983. Likewise, actionable deprivation, including loss of life, must be based on "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). The Constitution protects the right not to be deprived of life or liberty by a state officer who takes it or permits it to be taken by *abuse of his office and its powers. Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). In *Layne v. Vinzant*, supra, 657 F.2d at 471, this Circuit has ruled that:

> "... When a supervisory official is placed in actual notice of a prisoner's need for physical protection or medical care, administrative negligence can rise to the level of deliberate indifference to or reckless disregard for that prisoner's safety." (Citations omitted.)

The record before us does not reveal that plaintiffs' decedent notified or alerted defendants or defendants' agents of decedent's need for physical protection or that decedent had requested protection or alerted defendants thereof, and received none. Nor do the facts alleged reveal deliberate indifference by defendants.

We have canvassed the record searching to discern a material issue of fact and found none, except for the conclusory statement in plaintiffs' answer number 3 to defendants' First Set of Interrogatories, to wit:

> "Q. 3. State and specify the relationship between defendants' official posi-

tions and plaintiffs' deprivation of constitutional right.

> a) Identify the official acts performed by each defendant that led to the violation of plaintiffs' constitutional acts [sic] and state whether they were accidental or intentional.

> 1. Refer separately to each right which was violated and fully define it.

> 2. Refer separately to each defendant.

> b) Identify the person who will confirm or verify said allegations.

> c) Identify in detail all documents or other direct evidence which will support your allegations.

> A. 3. The defendants kept plaintiffs' decedent under their custody with such deliverate [sic] indifference that he was allowed to be murdered in violation of the most elementary due process guarantee."

We take notice, however, of plaintiffs' answer to the following interrogatories propounded by defendants:

> "6. State if plaintiffs' decedent had informed defendants that he had enemies in the same jail (Bayamón).

> a) State and specify if plaintiff's decedent requested protection while incarcerated in Bayamón.

> b) If the above answer is yes, identify the person with whom said request was made.

> c) State if defendants had any reason to believe that plaintiff's decedent was in danger of being killed.

> 1. Set forth specific examples if any, that apply solely to plaintiffs' decedent.

> d) Identify the persons who will confirm or verify said allegations.

> e) Identify in detail all documents or other direct evidence which will support the above averments.

> A. 6. No."

the Commonwealth.

---

**2.** See 32 LPRA Sec. 3061 et seq., for availability of Puerto Rico's tort remedies for claims against

It follows that viewing this case in the light most favorable to the plaintiffs, no case is made out by them. The defendants had no knowledge that plaintiffs' decedent, as distinguished from the offender population at large, faced any special danger.

■ Plaintiffs, nevertheless, opposed the motion for summary judgment on the basis of *Morales Feliciano v. Romero Barcelo*, 497 F.Supp. 14 (D.P.R.1979), a declaratory and injunctive relief action grounded on prison conditions in Puerto Rico, including the Bayamón Regional Jail, where plaintiffs' decedent was murdered. However, in that case, a *Young*-type suit,[3] the claim was addressed to the Commonwealth of Puerto Rico through its official agency representatives. A Court may order a State or Commonwealth to expend funds in the future to correct unconstitutional conditions in state institutions, in a *Young*-type case. But, the money expended by the state is a necessary consequence of *future compliance* with a court order, but not to award retroactive monetary relief. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974); *Penhurst v. Halderman*, — U.S. —, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). In *Morales Feliciano, supra*, 497 F.Supp. at 39–41, plaintiffs sought and obtained equitable relief to improve their living, sanitary, medical and physical conditions. In that case, the Court found the Commonwealth to have the primary responsibility for improving the general prison conditions. *Morales Feliciano, supra*, 497 F.Supp. at 41. Consequently, *Morales Feliciano* can only be construed in the light of the *Young* and *Edelman* cases, as an equitable relief case.

In essence, plaintiffs argue here that their decedent's death was caused by the overcrowded conditions and by the alleged insufficient number of guards to protect inmates. This argument was rejected by the Seventh Circuit in *Kish v. County of Milwaukee, supra*, 441 F.2d at 904, as ground for relief under 42 U.S.C. 1983.

Lastly, plaintiffs invite our attention to the fact that this Court's decision in *Rondon Pinto v. Jimenez Nettleship*, Civil 82–2582, which triggered our order to show cause, has been appealed to the First Circuit and argument thereon has been scheduled before the Court of Appeals next April. The *Rondon Pinto* decision motivated our order to plaintiffs to address the issues decided therein. Our ruling in the instant case is based, however, in our independent evaluation of the facts as set forth in the record in this particular case, and is not dependent on a resolution on the *Rondon Pinto* case.

■ We next address plaintiffs' claim under 42 U.S.C. §§ 1981 and 1985 as asserted in paragraphs 9 and 10 of the complaint. As to the Section 1985, the law is well settled that this section is limited to "class-based invidiously discriminatory animus behind the conspirator's action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 n. 10, 91 S.Ct. 1790, 1798 n. 10, 29 L.Ed.2d 338 (1971). In *Hahn v. Sargent*, 523 F.2d 461, 469 (1st Cir.1975), Judge Coffin explains the basis for liability under Section 1985 in this way:

"We have recently interpreted this requirement to mean that 'the complaint must allege facts showing that the defendants conspired against the plaintiffs because of their membership in a class and that the criteria defining the class were invidious." (Citations omitted.)

■ As to liability under Section 1981[4] suffice it to say that relief under this section is directed toward the "equal protection of the laws" safeguard. Section 1981, governing equal rights under the law

---

3. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

4. 42 U.S.C. § 1981 provides:
"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of all laws and proceedings for the security of persons and property as it is enjoyed by white citizens, and shall be subject to the like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

and property rights of citizens is designed to place black persons on an equal footing with whites concerning rights and privileges. *Harris v. Norfolk & W. Ry. Co.*, 616 F.2d 377 (8th Cir.1980). An allegation of inequality between different races is essential to establish a tort under this section. Consequently, failure to allege a racially discriminatory purpose makes this section inaccessible and inapplicable to plaintiffs' claim. *Vance v. Bordenkircher*, 533 F.Supp. 429 (D.C.Mo.1981).

Defendants having established that plaintiffs have failed to state a claim upon which relief can be granted, defendants' Motion for Summary Judgment is hereby GRANTED. The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.

